EVANS v. NEWARK RIVET WORKS et al.

(Circuit Court of Appeals, Third Circuit. December 1, 1903.)

No. 10.

1. PATENTS—INFRINGEMENT—FERRULE FOR UMBRELLAS.
    The Evans patent, No. 410,828, for a ferrule and point united by a dovetailed joint for umbrellas, canes, etc., is entitled only to a narrow construction, limiting it to the specific device shown and described; and it is not infringed by a tubular metal umbrella stick having a tip or plug swaged into its lower end, such stick not being the equivalent of the ferrule of the patented combination.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 121 Fed. 133.

E. Hayward Fairbanks, for appellant.

Francis C. Lowthrop, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This suit was brought for the alleged infringement of letters-patent No. 410,828, dated September 10, 1889, for an "improvement in ferrules for umbrellas, canes," etc., granted to

Samuel W. Evans, Jr., the complainant below and appellant. The specification states that the "invention consists of a ferrule having a point or tip connected with the same by means of a dovetailed joint, the same being formed by a neck on said point, and the metal of the ferrule embracing said neck." The drawings accompanying the specification very clearly show the subject-matter of the patent. The ferrule, A, is shown to be a short tube of sheet metal open at both ends, to the lower end of which is affixed a metallic point or tip, B. After referring to the drawings, the specifications proceed thus:

"The ferrule is primarily a tube open at both ends, the bottom receiving the point, the latter having at its upper end an inverted conical neck, C, or a neck that is tapering, the narrowest part thereof being below, leaving the shoulder, D, thereat. The point is inserted in the ferrule, the lower end of the latter resting against the shoulder, D, and the ferrule is then subjected to pressure, by rolling or otherwise, at the part circumscribing the neck, whereby it closes upon the neck, forming a dovetailed joint, thus firmly connecting the point with the ferrule, and producing a simple, inexpensive, and durable device for the purpose intended, the ferrule being nicely sustained on the shoulder, D, and not being liable to be withdrawn from the neck."

The claims of the patent are as follows:

"(1) A ferrule and point connected by a dovetailed joint, substantially as described.

"(2) A ferrule, in combination with a point, the latter having an inverted tapering neck, and the former embracing said neck, substantially as described.

"(3) A ferrule, in combination with a point, the latter having an inverted tapering neck and a shoulder at the narrow part thereof, the lower end of the ferrule resting against the neck, and the adjacent portion thereof bent upon said neck, substantially as described."

Assuming that the improvement here claimed is patentable, it is quite clear under the proofs as to the prior art, both as actually practiced and as shown in earlier patents, that the invention is very far from being a primary one. Indeed, to save the patent it is necessary to limit the patentee to the precise device he has shown and described. This evidently was the view upon which the court below proceeded. The art was old, and the improvement in question, at most, was one of mere form. We here content ourselves with referring to two prior patents, particularly mentioned in the opinion of the Circuit Court. The German patent to Mueller of 1880 shows a cane ferrule made as a band or tube with a forged steel bottom formed with a groove into which the ferrule band or tube is pressed in a lathe, producing "a very firm connection." The claim of that patent is this: "The setting in of a forged steel bottom provided with a groove into a cane ferrule, by pressing the ferrule band into the groove." Manifestly the difference between the Mueller patent and the patent in suit is a difference in form, and not in principle. The Lusher British patent of 1880 is for an improvement "in making ferrules for umbrellas, parasols, and walking sticks," and shows the ferrule combined with an iron point or tip. In one form the lower end of the tip is flush with the lower end of the tube, and in another form the ferrule has "a projecting iron end." The patentee states that he takes "a tube of brass or other ductile metal or alloy, the said tube being open at both ends"; that he places a "taper iron tip at the

bottom of the tube, the small end of the tip being downwards," and that by means of discs and pressure he gives the tube a taper figure; and he then states: "The pressure applied to the tube forces the metal near its closed end tightly around the conical tip, and at the same time forms an internal shoulder above it, so that when the closed end of the tube is removed by turning in a lathe the tip is held securely in the tube." Elsewhere in the specification we find the statement that the tip is securely held in its place, "its descent in the tube being prevented by the conical figure of the tube and tip, and its rising in the tube being prevented by the internal shoulder above the tip."

In view of the prior art, the court below, we think, was quite right in declaring that the patent in suit was not entitled to a liberal construction, but must be restricted to the specific device it discloses. Now, that device consists of two parts, namely, a ferrule and a point, united by a dovetailed joint. What the patent means by a "ferrule" is not doubtful. Knight's Mechanical Dictionary describes a ferrule as "a metallic ring or sleeve on the handle of a tool or the end of a stick to keep the wood from splitting." The Imperial Dictionary defines a ferrule to be "a ring of metal put around a column, cane, or other thing to strengthen it or prevent its splitting." Undoubtedly at the date of the complainant's patent the common understanding was that a ferrule for an umbrella or cane was a ring or short tube of metal fitted on and inclosing the lower end of the cane or umbrella stick. In that sense, evidently, the term is employed in this patent. The specification describes the ferrule as "primarily a tube open at both ends." The drawings show the finished device to be a ring or short tube closed at the bottom by the point or tip, but left open at the upper end. The completed device as exhibited by the drawings is a thimble-shaped appendage for a cane or umbrella stick. The complainant's expert testified thus: "XQ 29. Please look at complainant's patent in suit, and state how you understand the complete ferrule therein shown is to be applied to umbrellas and canes? A. To be slipped over the end."

Such being the patented device, was infringement by the defendants shown? The court below answered negatively, and we are now to consider whether this conclusion was right. In their manufacture the defendants employ a tubular metallic umbrella rod of suitable length for the umbrella stick. In the lower end of this rod is inserted a metallic plug or bullet. This end of the rod is then subjected to the action of a swaging machine, which closes down the metal of the tubular rod upon the plug or bullet, and gives a slight taper to the end of the rod. The defendants thus dispense with a ferrule altogether. By their method of manufacture they secure, indeed, a metallic point or tip; but, even assuming that the plug or bullet is united to the umbrella rod by a dovetailed joint, still the finished article is not the structure of the patent in suit. "A ferrule" is a specific element of each of the claims, and this element the court below rightly decided is not found in the defendants' structure.

The decree of the Circuit Court is affirmed.

## On Petition for Rehearing.
(January 18, 1904.)

PER CURIAM. We did not overlook, but gave due consideration to, the evidence which is again brought to our notice in connection with this petition. The "nickeled or tapered extremity" of the umbrella rod may be "designated" in the trade as a ferrule, but it is not a ferrule in the sense in which the term is used in the Evans patent. For the reasons stated in our opinion, heretofore delivered, the claims must be restricted to the precise device described and shown in and by the patent. The defendants do not use that device, but one substantially different.

The petition for a rehearing is denied.